WHELAN *v.* MAYOR & ALDERMEN OF MILLEDGEVILLE *et al.*

A declaration which alleges that under duress of threats of vexatious arrests and prosecutions, petitioner entered into an agreement with the defendant (a municipal corporation), and executed the same, to deposit with the clerk of council the sum of $500.00, with right to reclaim the same by suit, and that the clerk should hold the same as a deposit only and not as payment of license tax, subject to the determination of the courts, is not supported as to the terms of the alleged contract by a written agreement executed by the parties respectively, and after certain recitals stipulating, substantially, as follows: that an issue be joined and submitted to the superior court judge, with right to appeal to the Supreme Court, which may be so submitted by application for *mandamus*; provided the court holds that *mandamus* will lie in such case, requiring the mayor and aldermen to issue license for

the unexpired year from former payment in consideration therefor, or alternatively to refund the sum of $166.66 as overcharge on former license, and that the sum of $500.00 deposited by the retailer (plaintiff) to-day with the clerk of council be held as payment for license to-day issued, if the court shall hold against the application for *mandamus;* and that if *mandamus* be sustained, then only $333.33 be held as payment for license, and the balance of the $500.00 deposited be refunded to the retailer, it being the true intent and meaning of this agreement that said sum of $500.00 is payment for only the sum which shall be adjudged due for said license to February 1st, 1892.  A nonsuit on the ground of variance between the evidence and the declaration was proper.

April 3, 1893.  Argued at the last term.          *Judgment affirmed.*

Complaint.  Before Judge JENKINS.  Baldwin superior court.  January term, 1892.

On April 10, 1891, Whelan sued the Mayor and Aldermen of Milledgeville and the clerk thereof, alleging that they and their successors were indebted to him $500 with interest, for that on May 31, 1890, he opened a store in Milledgeville as retailer of liquors, and paid defendants $500 tax or license therefor and therefrom. On February 1, 1891, the further sum of $500 was demanded of him for license to retail liquor for a year thereafter, which they had no right to demand or recover. Under duress of threats of vexatious arrests and prosecutions, he entered into an agreement with them to deposit with the clerk $500, with right to reclaim it by suit, and that the clerk should hold the same as deposit only and not as payment of license tax, subject to the determination of the courts. He has repeatedly demanded this deposit of defendants, who refused to deliver it.

After plaintiff had introduced his evidence, a nonsuit was granted on the ground that there was a fatal variance between the declaration and the agreement, in that the declaration set out a good cause of action for the $500 deposited in February, 1891, while the agreement reserved the right to litigate only as to the excess of $166.66 paid in May, 1890.

The agreement mentioned was by plaintiff and other liquor retailers, and by the mayor and clerk. It recites, that whereas, in May, 1890, plaintiff and others applied to the mayor and aldermen for license to retail liquors; and whereas, the receipt therefor only recognized their right so to retail up to February 1, 1891, and granted license to expire on that day, about eight months; and afterwards in October, 1890, and February, 1891, said retailers petitioned to have the time named in the license extended to the full year, which was refused; and whereas, there was a legal issue pending between the parties as to whether they were legally entitled to the extension; and whereas, the present ordinance required license to be taken out on February 1, 1891, and held for one year therefrom: therefore it is agreed between the parties, that said issue be joined and submitted to the judge of the superior court, with right of appeal to the Supreme Court,—which may be so submitted by application for *mandamus,* provided the court holds that *mandamus* will lie, requiring the mayor and aldermen to issue license for the unexpired year from the former payment in consideration therefor, or alternatively to refund the sum of $166.66 as overcharge on former license, and that the sum of $500, deposited by each of said retailers to-day with the clerk, be held as payment for license to-day issued, if the courts shall hold against the application for *mandamus;* and that if *mandamus* be sustained, then only $333.33 be held as payment for license, and the balance of the $500 deposited be refunded to said retailers severally; "it being the true intent and meaning of this agreement that said deposits of $500 is payment for only the sum that shall be adjudged due for license to February 1st, 1892."

Plaintiff testified: On May 15, 1890, he opened a saloon and paid $500 to the city clerk for license to retail, the clerk giving him a receipt for the money, recit-

ing that his license expired on February 1, 1891. About February 1, 1891, the marshal notified him, from the mayor, that he must pay $500 for new license for the year therefrom. He refused to do it, and the marshal told him he would be arrested and his store closed if he he did not. He appeared before defendants with his counsel, and requested them to recognize his right to retail up to May 15th, or credit their present demand against him with the excess he had already paid. This they refused. His attorney proposed that they issue tax *fi. fa.*, that the matter might be determined by friendly suit rather than by criminal prosecutions and mutual arrests. They refused to do so, or to disclaim a purpose to arrest him for each drink, as had been reported to him. At a later meeting a compromise was entered into in writing, by which the courts were to settle the disputes, the claim of the city in the meantime being secured by a deposit with the clerk of the sum claimed. Plaintiff's attorney testified, that at the meeting of council he made the proposition as to issue of tax *fi. fa.*, and the council refused absolutely, though claiming they only wanted what was honestly due the city; that angry altercations ensued, when one of the aldermen proposed that an agreement might be made, in which formal compliance with the ordinance and adequate reservation of right to litigate might be provided; that this was acceded to and an adjourned meeting held to execute it, and accordingly the agreement was prepared by witness, amended by defendants and signed, with the frank mutual consent that no claim of right should be prejudiced thereby, but that all issue between the parties be honestly submitted to the court. Plaintiff put in evidence a section of the city charter authorizing the collection of a tax of $500 of retail liquor dealers; and a part of the liquor ordinance of February, 1891, to the effect, that no license for the retail of liquors should

issue other than in certain localities; and that the price of each license should be $500 per annum, payable in advance, the term to end February 1, 1892.

C. P. CRAWFORD and D. B. SANDFORD, for plaintiff.

ROBERTS & POTTLE and WHITFIELD & ALLEN, for defendants.